THE STATE OF MISSOURI *ex rel.* CHAS. HYSLOP, Curator, etc., Appellant, v. JOHN S. BILBY, Respondent.

Kansas City Court of Appeals, May 16, 1892.

1. **Guardians and Curators:** PROCEEDS OF REAL ESTATE: GENERAL BOND: STATUTE. When by section 2593, Revised Statutes, 1889, the legislature gave authority to the probate court to order a sale without requiring a special bond, it contemplated that the general bond already in existence would cover the case.

2. ———: NEW BOND LIABLE FOR BALANCE CARRIED FORWARD. Though money may have been misappropriated by the guardian under the old

bond and before the execution of the one sued on, yet il such sum was carried forward in his settlement and made up a part of the balance against him on his final settlement, and failure to pay over such sum occurred during the existence of the latter bond, there is a breach of the latter bond.

3. ———: FINAL SETTLEMENT CONCLUSIVE. The settlement which a guardian makes upon his resignation or the revocation of his authority, is a final settlement and as such it is conclusive upon his sureties. (*State ex rel. v. Grace,* 26 Mo. 87, and *State ex rel. v. Martin,* 18 Mo. App. 468, *distinguished.*)

*Appeal from the Nodaway Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

REVERSED AND REMANDED.

*S. R. Beech,* for appellant.

(1) As to proceeds of sale of land, and the interest thereon. The court erred in admitting evidence relative thereto, and in directing the jury, in instruction, numbered 1, given for defendant, to deduct such proceeds and interest from amount found to be due ward by the former curator's (Wood's) final settlement. R. S. 1879, secs. 2592, 2593. As to interest, see *Frost v. Winston,* 32 Mo. 489; R. S. 1879, sec. 2599; *State to use v. Richardson,* 29 Mo. App. 596. (2) Defendant Bilby, as surety on the bond in suit, is liable for moneys charged by his principal against himself, in settlements under the last bond, notwithstanding the principal (Wood's) may have converted and squandered the same under a former bond. *State to use v. Drury,* 36 Mo. 281; *State ex rel. v. Sanders,* 30 Am. Rep. 203; Schouler's Domestic Relations [Last Ed.] sec. 367; *State to use v. Fields,* 53 Mo. 474; *State to use v. Berning,* 74 Mo. 94; *Roper v. Lodge,* 33 Am. Rep. 60; *Morley v. Town of Metamora,* 20 Am. Rep. 266. (3) As to the respondent being entitled to credit of $160 for his principal (father and curator of

ward) and himself, for board and education of ward. He is not *State to use v. Berning*, 74 Mo. 100; *State to use v. Richardson*, 29 Mo. App. 595. The curator's intent to charge the ward for maintenance, if the ward could and did earn his own support, and if for that reason it would not have been a proper item of credit for the curator in the probate court, then intent would make no difference, and defendant cannot benefit by it in this suit. *State to use v. Miller*, 44 Mo. App. 118.

*Gallatin Craig*, for respondent.

(1) Is the defendant Bilby (respondent), one of the sureties on the curator's general bond in suit, liable for proceeds of sale of ward's land, sold for reinvestment under order of probate court? *State to use v. Harbridge*, 43 Mo. App. 16; *Williams v. Morton*, 38 Me. 52; s. c., 61 Am. Dec. 229; *Lyman v. Conkey*, 1 Metc. (Mass.) 317; *Governor v. Barr*, 1 Dev. (Law) 65; *Governor v. Matlock*, 1 Dev. 214; *Waters v. State*, 1 Gill, 302; *Commonwealth v. Toms*, 45 Pa. St. 408; *Commonwealth v. Pray*, 17 Atl. Rep. (Pa.) 450; *State v. Young*, 23 Minn. 551; *Henderson v. Coover*, 4 Nev. 429; *Mattoon v. Cowing*, 13 Gray, 387; *State v. Johnson*, 55 Mo. 80; *Morris v. Cooper*, 35 Kan. 156; s. c., 10 Pac. Rep. 588; *Madison Co. v. Johnston*, 51 Iowa, 152; *Bunce v. Bunce*, 65 Iowa, 106; s. c., 21 N. W. Rep. 205; *Warwick v. State*, 5 Ind. 350; *Judge of Probate v. Toothaker*, 22 Atl. Rep. 219; 83 Me. 195; *Chandler v. Burkholm*, 44 N. J. Eq. 254; s. c., 14 Atl. Rep. 888. (2) Is the defendant entitled to a credit of $160 for board and education of ward? Respondent contends there was such evidence, and that the trial court correctly submitted same in said instruction. *State to use v. Miller*, 44 Mo. App. 118; *State to use v. Morton* 18 Mo. App. 468; *State to use v. Slevin*, 93 Mo. 253.

ELLISON, J.—This suit is by a present guardian against the surety on a prior guardian's bond, and is here on plaintiff's appeal. March 20, 1876, one John S. Wood was appointed guardian and curator of his minor son, and on that day executed his bond for $6,000 conditioned for the faithful performance of his duties. April. 2, 1883, the probate court, finding that one of the sureties on such bond had become insolvent, ordered Wood to give an additional bond for $6,000, in lieu of the first, which he did on that day, the defendant herein being one of the sureties. On May 15, 1891, the probate court revoked Wood's authority as guardian for his failure to file another additional bond, and placed the guardian and curatorship in the hands of this relator, he being the public administrator of Nodaway county, as provided by section 5336, Revised Statutes, 1889. Wood filed his final settlement of his accounts, whereby it appeared that he was indebted to the ward, the amount of which the probate court ordered him to pay over to this relator, and which he has refused to do.

The principal defense set up by defendant is that the greater portion of the sum for which Wood defaults arose from the sale of the ward's real estate for reinvestment, and that a guardian is not responsible on his general bond for such trust, the security for such fund being a special bond which should be required of the guardian. Such was the law prior to the revision of 1879, under which this case arose. It was so held in a well-considered opinion by Judge THOMPSON in *State to use of Martin v. Harbridge*, 43 Mo. App. 16. The sections of the statute of 1879 bearing on the subject are as follows: Sec. 2592. "When it shall appear that it would be for the benefit of a ward that his real estate, or any part thereof, be sold or leased, and that the proceeds be put on interest, ·or

invested in United States or state bonds, or in other real estate, or in the preservation of other estate of the minor the probate court may authorize and order such sale, leasing or investment." Sec. 2593. " To obtain such order, the guardian or curator shall present to the court a petition setting forth the condition of the estate, and the ·facts and circumstances on which the petition is founded. If, after full examination, on the oath of credible and disinterested witnesses, it appears to the court that it would be for the benefit of the ward that the real estate, or any part of it, should be sold or leased, the court may make an appropriate order for such sale or lease under such regulations and conditions, subject to the provisions of this chapter in relation to the sale of the real estate of minors, as the court shall consider suited to the case, first requiring the guardian or curator to enter into good and sufficient bonds to make such leases and conduct such sales with fidelity to the interests of his ward, and faithfully to account for the proceeds of such sales and leases according to law, and as the order of the court may require, *if the court shall be of the opinion that such bond is necessary.*"

The only material amendment relating to this question in the first section was substituting the probate court for the circuit court. The italics in the latter section are what was added, by way of amendment, in 1879. And the question is whether such amendments do not change the law. We will presume that in a case, where the probate court does not require the bond referred to in the latter section, such court does not deem it necessary, and we think it almost necessarily follows that such court, in determining whether it is necessary, considers the guardian's general bond, its sufficiency in amount and solvency. We cannot, for a moment, believe that the legislature intended by the

addition of those words, in any event, to authorize a guardian to sell real estate, take possession of the fund arising thereon and reinvest it without the protection of a bond. It would be against the whole policy of the law. So that we must conclude that, where the legislature gave authority to the probate court to order a sale without requiring a special bond, it contemplated that the general bond already in existence would cover the case. Otherwise, as before intimated, we would, in many instances, have guardians handling and investing trust funds without bond—a condition of affairs relating to the interests of minor children not to be tolerated unless clearly directed by law.

II. Since the cause must be retried, we will proceed to dispose of the remaining points urged by appellant relating to money unaccounted for which arose from other sources than the sale of real estate. Notwithstanding such money may have been misappropriated by the guardian before the execution of the second bond, the one here sued on, yet such sum was carried forward in his settlements and made up a part of the balance against him on his final settlement, and his failure to pay over such sum occurred during the existence of the latter bond, and is a breach thereof. The statute regulations of administrator's bonds are made applicable to the bonds of guardians. And section ˅30 of the administration statute of 1879 provides that, when the additional bond is approved, it shall discharge the former securities from liability arising after filing the same. But the fact that a breach of the old bond occurred by the malfeasance of the guardian, so as to render the sureties thereon liable, does not prevent liability also attaching under the new bond for failing, as before stated, to pay over the amount found due on his settlements. *State*

*ex rel. v. Drury*, 36 Mo. 281; *State ex rel. v. Berning*, 74 Mo. 94.

III. The original guardian made his settlement preparatory to turning over the estate to this relator, his successor. This settlement disclosed a balance due the ward. The court ordered him to pay it over to this plaintiff as his successor, and the plaintiff afterwards demanded it of him, but, as before stated, he has refused to pay. In some of his annual settlements, it appeared that he had credited himself with sums for the education and support of the ward; but in this settlement he annulled those credits, and stated that for the period for which the credit had been taken the ward had been self-sustaining. This, of course, increased the amount of his indebtedness to his ward, and defendant, as his surety, was permitted to show in the trial court that such credits were proper and should not have been annulled in the last settlement; and the question as to the propriety of the credits was, in effect, submitted to the jury by directing them to allow such credits, notwithstanding the last settlement, provided they believed the guardian intended to charge the ward for support and education at the time. We think this should not have been done. In our opinion the settlement which a guardian makes upon his resignation, or the revocation of his authority, is a final settlement and that as such it is conclusive upon his sureties. This we believe to be the proper construction of sections 5329, 5330, 5331, Revised Statutes, 1889. And such is the view of Schouler's Executors & Administrators, section 531; Croswell's Executors & Administrators, section 729. In saying this we are not unmindful of the fact that such settlement is not a final settlement of the estate; but it is a final settlement of such guardian, and as such has the same force and conclusive effect as to such guardian and his sureties,

as if it was a final settlement of the ward's estate, and cannot be attacked in a collateral way. It should have been appealed from, or, if fraudulent, it should first be set aside. That such is the effect of a final settlement of the estate is not a disputable question. *State v. Holt*, 27 Mo. 340; *State ex rel. v. Cruesbauer*, 68 Mo. 254; *Dix v. Morris*, 66 Mo. 514; *State ex rel. v. Rucker*, 59 Mo. 17.

It was decided in *State ex rel. v. Grace*, 26 Mo. 87, under a statute requiring, in the event of the death of a guardian, that the probate court should ascertain, in any practical way, the state of his account, that, when such court had his administrator settle the guardianship account, it was only *prima facie* evidence against his sureties. And in *State ex rel. v. Martin*, 18 Mo. App. 468, this court decided, under the statute yet in force, which provides that, upon the death of a guardian, his administrator shall make settlement of his guardianship account, that such settlement was only *prima facie* evidence against the sureties of the guardian. But these cases do not cover the case before us. In the case of the death of the guardian his administrator does not settle with the court at all, but with his successor. R. S. 1889, sec. 5333. There is no judgment or other binding ascertainment of the state of the account. But in case of the resignation, or removal, there is a final settlement in court upon due notice and a *final* judgment rendered which may be enforced by attachment or action on the bond. It is familiar law that a final judgment rendered by a court of competent jurisdiction cannot be questioned collaterally. The condition of guardians' bonds is "for the faithful discharge of their duties according to law." R. S. 1889, sec. 5299. It certainly is the guardian's duty to pay a *final* judgment when rendered against him. When he does not appeal therefrom, it becomes con-

clusive upon him, and if he does not comply therewith he has not made a "faithful discharge of his duty." There is undoubtedly a breach of the bond.

The result of the foregoing considerations leads to a reversal of the judgment and remanding the cause, which is accordingly ordered.   All concur.