89    270
s101    30

## AMERICAN HARDWOOD LUMBER COMPANY, Respondent, v. LEANDER F. NICKEY, Appellant.

### St. Louis Court of Appeals, March 12, 1901.*

1. **Practice, Trial:** JUDGMENT: MOTION FOR JUDGMENT: PLEADINGS. Where a motion for judgment on the pleadings is sustained, every ground except those mentioned in the motion is excluded, though other grounds in support of the judgment may be found in the pleadings.

2. ———: ———: JURISDICTION: SUBJECT-MATTER OF ADJUDICATION: PARTIES. Nothing is adjudicated or should be contained in a judgment that has not passed under review of the court having jurisdiction of the subject-matter and the parties to the suit.

3. ———: ———: ———. In the case at bar, after the Oregon county judgment was read in evidence, the only issue left to be submitted to the jury was whether or not Short & Kilgore had kept and performed the contract prior and up to June 15, 1896, when the substitutional contract was made. If they did, plaintiff is entitled to recover; if they did not Nickey is entitled to retain the money as liquidated damages for violation of the contract by Short & Kilgore.

Appeal from Butler Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED.

*This case was received too late to be placed in chronological order.

STATEMENT OF THE CASE.

The facts in the record are complicated and must be set out with some fullness to make the controversy clear.

On the tenth day of September, 1895, the appellant, Leander F. Nickey, and a co-partnership composed of Samson Short and Hugh F. Kilgore, doing business under the style of Short & Kilgore, made a contract by which Nickey leased to the firm certain tracts of land in Butler county, Missouri, for the term of two years or until the merchantable timber thereon had been exhausted, together with a sawmill plant and machinery. He also sold to them all the merchantable timber, of dimensions unnecessary to state, and agreed to deliver not less than ten thousand feet per day at the mill. Short & Kilgore were to pay the taxes on the mill, machinery and land, and keep insurance on the plant in the sum of $3,000 during the continuance of the lease. They were further to pay for the timber on the fifteenth day of each month at the rate of $6.50 per thousand feet, were to set up and put in the machinery at their own expense, put in booms and skidways for the convenient handling of logs, make all necessary repairs on the machinery and buildings, and deliver the same at the end of the term to Nickey in as good order as they received them, less necessary wear and tear. They agreed to not purchase logs directly or indirectly from any one but Nickey. There was some further machinery to be added by Nickey, it seems, to what was already on the land.

The contract provided that $500 should be paid by Short & Kilgore to Nickey at the time of its execution, and $1,000 when the balance of the saw mill machinery had been delivered free on board at Harviell for the use of the firm. There was the following stipulation about these sums:

"Which said sum shall be taken and considered part pay-

ment for the timber so to be delivered by the said party of the first part to the said party of the second part and also to be held by the said party of the first part as security for the due and proper performance of the said contract by the said parties of the second part. But it is hereby stipulated and agreed that no part of the said five hundred dollars or of the said one thousand dollars, above provided for, shall be applied to the payment for the said timber so to be delivered as above provided for by the said party of the first part to the party of the second part until the terms of this contract shall have been so far complied with by the said party of the second part as that the advance payments above provided for shall be sufficient to secure the due and proper completion of the said contract by the said party of the second part, then the said fifteen hundred dollars shall be applied to the monthly payments for said timber so to be delivered by the said party of the first part as above provided.

"It is further understood and agreed that if the said party of the second part shall fail, neglect or refuse to keep and perform his part of this agreement they shall forfeit to the said party of the first part, all the payments made to the said party of the first part under and by virtue of this agreement."

This stipulation was in the contract: "It is further understood and agreed that the said party of the second part (namely, Short & Kilgore) may assign this lease or contract to the American Hardwood Lumber Company of St. Louis, Missouri, but in the event of such assignment being made by the said party of the second part, the said American Hardwood Lumber Company of St. Louis, Missouri, shall become a party to this contract and be bound by all the conditions and terms of said contract."

After the attestation clause and the signature of the

parties, appears the following:

"Poplar Bluff, Mo., September, 1896.

"For value received we hereby assign all of our right, title and interest in and to the above contract to the American Hardwood Lumber Company of St. Louis, Mo.

(Signed)   "SHORT & KILGORE, per H. L. KILGORE."

The following assignment was introduced by the plaintiff:

"In consideration of the sum of fifteen hundred dollars advanced by the American Hardwood Lumber Company for us, and paid to L. F. Nickey, to be held by him as security for the due and proper performance of a contract entered into between the said Nickey and us on September 10, 1895, we hereby transfer, sell and assign unto said American Hardwood Lumber Company, its successors and assigns, all our right, title and interest in and to said fund so deposited with said Nickey, and all choses in action which we may have against said Nickey for failure to return said sum of $1,500.

"Witness our signature hereto, this twelfth day of September, 1896.

SHORT & KILGORE, per H. L. KILGORE."

This document was admitted over the objection of the defendant and an exception to its admission was duly saved.

In June, 1896, Nickey brought a suit by attachment in the circuit court of Butler county against Short & Kilgore to recover $2,692.91, alleged to be due him for logs which he had delivered to the defendant under said contract of September 10, 1895. This action led to negotiation by Nickey, Short & Kilgore and the American Hardwood Lumber Company, which resulted in the latter paying Nickey's demand, who dismissed his attachment suit and released the levy on the mill, machinery, lumber and timber, there being an agreement that

Vol 89 app—18

no action for damages should be brought on the bond.   On the sixteenth day of May, 1896, two or three. weeks before this attachment was brought, a contract had been entered into between Short & Kilgore and the plaintiff in this cause, by which the control, charge and management of the sawmill, lumber yard and timber were turned over to the latter by Short & Kilgore during the term of the lease from Nickey.   It is unnecessary to set out the contents of this agreement further than to say that the plaintiff company was empowered to employ suitable men to operate the plant, were to take all the lumber cut at a stipulated price, and in consideration thereof were to make advancements, presumably to Short & Kilgore although this is not stated, between the first and fifteenth of each month, sufficient to pay for the logs and expense of running the mill. This contract seems to have been the real cause of Nickey's beginning his attachment suit.   The settlement of that action brought about a contract between the American Hardwood Lumber Company of the first part, and Nickey of the second part, dated June 15, 1896, by which the first party agreed to pay Nickey the sum of $367.58, being the balance due to him by Short & Kilgore prior to June 1, 1896, under the contract of September 10, 1895.   The first party also agreed to purchase from Nickey all logs then cut on his land at the same prices specified in the contract of September 10, and subject to the same inspection, payment to be made in thirty-days acceptances instead of in cash.   The American Hardwood Lumber Company were permitted to use the sawmill. and machinery, free of charge for the purpose of cutting the logs, as long as it might be necessary to do so, that is, for the period required to cut the logs then on the premises or which might be purchased from Nickey thereafter.

The following term appears in the contract:   "It is mutually understood between the two parties hereto that it is

not the intention to have party of the first part by this agreement assume the obligations of Short & Kilgore, several times herein referred to, but that only such portions of said contract as are specially referred to as being part of this agreement shall be considered incorporated herein; reference to said contract being merely to avoid setting out in full herein the portions adopted." The instrument includes an agreement for the disposition of the attachment suit.

Another agreement was entered into January 21, 1897, between the appellant and the respondent by which the sawmill was redelivered to Nickey and accepted by him as being in good condition, also all the machinery, tools and personal property on the premises, except the logs and lumber. In consideration of this action Nickey released the respondent from the payment of any sum claimed to be due him from the respondent for logs which he had delivered to it.

There was also this proviso: "But it is stipulated and agreed, that the execution of this agreement shall not be taken or construed as a waiver of any right or claim for damages by reason of the breach, if any, by either party hereto, of any previous contract between the parties hereto, except as herein specially waived and released."

In addition to the attachment suit, Nickey began an action to the May term of the circuit court of Butler county against the American Hardwood Lumber Company and Short & Kilgore, for damages on account of alleged breaches of the contract of September 10, 1895. In his petition he charged that the American Hardwood Lumber Company was the real party in interest to the said contract, both because it was made by Short & Kilgore for its benefit and because they assigned their interest to the said company immediately after its execution. It is further charged that after the twentieth day of May, 1896, the defendants refused to receive any more logs or tim-

ber, although the plaintiff Nickey was all along ready, willing and offering to deliver the same. The profits which could have been realized by Nickey, if the defendant had received the logs and lumber as they were bound to do, were laid at $20,350, for which judgment was prayed. A change of venue was applied for by one of the defendants in said cause and it was sent to the circuit court of Oregon county. An answer was filed by the American Hardwood Lumber Company, admitting the execution of the contract of September 10, 1895, that Short & Kilgore executed the assignment of said contract to it on September 10, 1895, denying that it ever accepted said assignment and denying every other allegation of the petition, further denying specifically that plaintiff performed the contract of September 10, 1895, on his part, to deliver good merchantable timber. The said answer contains also the following: "And for a further answer, this defendant states, that in and by said contract of September 10, it is provided that parties of the second part, the defendants, Short & Kilgore, should pay to plaintiff the sum of five hundred dollars on the signing and delivery of said contract and a further sum of one thousand dollars when the balance of the sawmill machinery should be delivered on board cars at Harviell station, Missouri, which sum of fifteen hundred dollars was to be held by plaintiff as security for the due and proper performance of said contract by defendants, Short & Kilgore, and if defendants, Short & Kilgore, failed, neglected or refused to keep and perform their part of said contract they shall forfeit said sum to plaintiff. And this defendant now alleges that said fifteen hundred dollars was so paid to plaintiff by defendants, Short & Kilgore, and that no part thereof has ever been returned or repaid to said defendants. Short & Kilgore, or to this defendant. That it was the intention of the parties to said contract that the said sum of fifteen hundred dollars should be taken

and considered as liquidated damages for a breach of said contract by defendants Short & Kilgore, and this defendant alleges that plaintiff by retaining said sum of money has waived, released and discharged all the pretended claims for damages set out in said petition." An allegation denying that the plaintiff had performed then follows and afterwards the pleading proceeds: "And for a further answer, this defendant alleges that the said contract of September 10, 1895, between plaintiffs and defendants Short & Kilgore, was abandoned by plaintiff and a new contract in writing entered into between plaintiff and this defendant relating to the same subject-matter as the said contract of September 10, 1895, which new contract was a substitute for, took the place of, and superseded said former contract between the plaintiff and defendants, Short & Kilgore; said new contract being dated June 15, 1896, and being hereto attached as exhibit 'A.' And this defendant avers that it has in all respects fully performed said new contract of June 15, 1896."

Nickey filed a replication in which he admitted the execution of the contract of June 15, 1896, but alleged that prior thereto the defendants Short & Kilgore and the American Hardwood Lumber Company had broken the conditions of the one of September 10, 1895, by not paying for the timber, on which account he had brought the aforesaid attachment suit and that the agreement of June 15, 1896, had been entered into solely for the purpose of settling said attachment suit and not to rescind, annul and abrogate the agreement of September 10. He also replied that on January 21, 1897, he entered into an agreement with the American Hardwood Lumber Company and pleaded substantially the portions of said agreement hereinbefore given, emphasizing the stipulation that it should not be construed as a waiver of any breach by either party of the preceding contracts and charging that this in-

strument of January 21, 1897, therefore recognized the one of September 10, 1895 as being in existence and not abrogated by that of June 15, 1896. The other allegations of the answer were denied. Thereupon the respondent in this case (defendant in that one) filed a motion for judgment as follows:

"Comes now the defendant, the American Hardwood Lumber Company, and moves the court to enter judgment for defendant upon the pleadings and as grounds for said motion states:

"1. That the replication herein admits the execution of the contract of June 15, 1896, pleaded by defendant as a substitute for the contract of September 10, 1895, sued on by plaintiff and does not state facts sufficient to avoid it.

"2. That the replication sets up the execution of a contract on January 21, 1897, relating to the same subject-matter, and plaintiff can not recover on the contract of September 10, 1895."

The circuit court of Oregon county sustained the said motion and ordered that defendant have judgment on the pleadings.

There was another action brought by Nickey against Geo. F. Cottrell in the circuit court of Wayne county for slander. Cottrell was the secretary of the respondent company. On the twenty-second day of February, 1899, there was a compromise of this controversy, which Nickey and R. F. Scott, his attorney in that action, testified was understood to be an adjustment of all matters in controversy then pending between Nickey, Cottrell or the American Hardwood Lumber Company. At that time judgment had been entered in the aforesaid case in Oregon county, but an affidavit for appeal had been filed by Nickey which was still pending. The latter and Scott swore that they understood the settlement with Cottrell adjusted that controversy. Nickey also testified that the

plaintiff company admitted over and over again that he was entitled to keep the forfeit money and never made any claim to it until the present action was started. The following instrument was signed at the date of this settlement:

"Received of American Hardwood Lumber Company and George F. Cottrell the sum of two hundred and eighty-five dollars in full payment and satisfaction and discharge of all claims of action of whatsoever kind or nature, whether on contract or in tort, which I may have against either said American Hardwood Lumber Company or said George F. Cottrell. And in consideration of said payment, I also agree to dismiss at my cost all suits heretofore brought by me, and wheresoever pending, against either said George F. Cottrell or American Hardwood Lumber Company.

"Dated at Poplar Bluff, Missouri, this twenty-second day of February, 1899.

(Signed) "L. F. NICKEY."

All the testimony of Nickey and Scott, as to what was included in the adjustment, was stricken out by the court on motion of the respondent.

A. H. Woeheide, who was manager of the respondent company from September 1, 1895, to February 1, 1897, testified to the relations between Short & Kilgore and the respondent, the purport of his evidence being that the respondent furnished money to that firm to carry on their lumber business in consideration of their output being turned over to the respondent, up to May, 1896, at which time the lumber company took charge of the plant; that the company was not a party in interest to the contract until then, and although Short & Kilgore had previously executed the assignment of the contract of September 10, 1895, the respondent had not accepted it. It appears that the $1,500 forfeit money was advanced by the latter at the time it was deposited with Nickey.

This action was instituted by the American Hardwood Lumber Company as the assignee of Short & Kilgore, by virtue of the aforesaid assignment of June 12, 1896, to recover the said sum of $1,500. It is charged that Short & Kilgore performed their undertaking in all respects but that Nickey, after June 15, 1896, refused to permit further performance, whereupon the plaintiff became entitled to the return of said forfeit money. The answer alleges that the plaintiff was the real party to the original contract, because it was made for it and because of the assignment of Short & Kilgore to the plaintiff on its execution. It charges that the said sum of $1,500 was deposited to be forfeited if there were any breaches of the said contract by Short & Kilgore or the plaintiff, but if there were none, to be applied as payment on logs; denies that Nickey refused to perform his part or to permit Kilgore to perform; alleges that defendant was all along ready to do his part, but that in May, 1896, a fraudulent conspiracy was entered into, between both the plaintiff and Short & Kilgore, to cheat the defendant out of pay for his logs which led to the aforesaid attachment suit, after the settling of which it says, Short & Kilgore never had any further charge of the machinery or premises. It then pleads the judgment of the circuit court of Oregon county as an adjudication in favor of the defendant giving him the right to retain the said sum as liquidated damages for breaches of the first agreement. It likewise pleads the settlement of the suit in Wayne county as an accord and satisfaction of all differences between the defendant and the plaintiff in this action, including the matters involved herein. Plaintiff filed a replication in which it pleads the judgment of the circuit court of Oregon county as an adjudication in its favor to the effect that Nickey had, by the contract of June 15, 1896, abandoned the one of September 10, 1895, and that therefore said judgment was a bar to any claim by the defend-

ant, that either Short & Kilgore or the plaintiff were guilty of breaches of the contract of September 10, 1895, or were liable therefor, and that hence the defendant had no right to retain the said $1,500 as forfeit money on account of any such breaches.

The court refused all the appellant's instructions and directed the jury to return a verdict in favor of the plaintiffs for $1,500 and interest, which was done.

*E. R. Lentz* for appellant.

(1)   Plaintiff in this case was defendant in the case of Nickey v. American Hardwood Lumber Company et al., in the circuit court of Oregon county.   In that case it pleaded the $1,500 here sued for as assessed and liquidated damages for the breach of the contract sued on in that case, and that plaintiff there, defendant here, by retaining said sum, had released and discharged all other claims for damages.   It can not be allowed to assume inconsistent positions.   On its motion the court, there, rendered judgment on the pleadings in favor of the defendant.   It is now bound by that judgment, and is estopped from assuming a different position in regard thereto.   Hermann on Estoppel, sec. 823, and note; Newell v. Meyendorff (Mont. S. C.), 8 L. R. A. 442; Robertson v. Smith (Ind S. C.), 15 L. R. A. 273.   (2)   The judgment in the case of Nickey v. American Hardwood Lumber Company et al., went to the whole case as made by the pleadings in that case.   The general rule is, that "the verdict, findings and judgment must be as broad as the issues, and respond to all the issues presented by the pleadings."   2 Enc. Plead. and Prac., p. 866.   (3) In the case of Nickey v. American Hardwood Lumber Company et al., plaintiff filed his petition.   Defendant filed answer.   Plaintiff filed replication.   Defendant then filed mo-

tion for judgment on the pleadings. This motion was in the nature of a demurrer, and for its purposes admitted the truth of all the facts pleaded by the opposite party, both in the petition and the replication. 2 Enc. of Plead. and Prac., 1046; Taylor v. Palmer, 31 Cal. 257; People v. Johnson, 95 Cal. 471; De Taro v. Robinson, 91 Cal. 371; Stewart v. Erie, &c., Co., 17 Minn. 375; Floyd v. Johnson, 17 Mont. 469. The pleadings consist of petition, answer or demurrer to petition, and replication or demurrer to answer, and demurrer to replication. Green & Myers, Plead. and Prac., sec. 276-277.

*Phillips & Phillips* and *Lambert E. Walther* for respondent.

(1) Where, by mutual consent, a contract has been abandoned, action for money had and received will lie to recover money paid to secure performance of same. 4 Waite's Actions and Defenses, sec. 23, p. 501; Beaman v. Simmons, 76 N. C. 43; Tompkins v. Seely, 29 Barb. 212; Smith v. Lamb, 26 Ill. 396. (2) The judgment in the Oregon county case was, in effect, that an action for breach of the contract of September 10, 1895, could not be maintained, because a subsequent contract relating to the same subject-matter had been entered into. The decision of that court was correct, as an inspection of the contracts of September 10, 1895, and June 15, 1896, shows that they relate to the same subject-matter and could not co-exist. Chrisman v. Hodges, 75 Mo. 413; Oberbeck v. Sportsman's P. Asso., 17 Mo. App. 312; Munford v. Wilson, 15 Mo. 540; Stewart v. Keteltas, 36 N. Y. 392; Howard v. Railroad, 1 Gill (Md.) 340. (3) But, whether right or not, the judgment is binding upon the parties to this action, both having been parties to that proceeding. And the matter of appellant's right to recover damages for breach of contract

having been tried and settled in that case, that claim can not now be urged here as a defense. Mason v. Summers, 24 Mo. App. 174. (4) A judgment on demurrer may be as final and conclusive between the parties as any other. It is otherwise only when the judgment on demurrer results from a defective pleading or other demurrable matter not related to the merits of the case. Coleman v. Dalton, 71 Mo. App. 23. (5) The peremptory instruction was properly given, as defendant offered no evidence which would be sufficient in law, if true, to warrant the jury in finding in his favor. Clark's Admx. v. Railroad, 36 Mo. 216; Lee v. David, 11 Mo. 114.

BLAND, P. J.—After alleging the substitution of the contract of September 10, 1895, the deposit of the fifteen hundred dollars by Short & Kilgore, with Nickey as provided for by the contract, the petition alleges: "That said Short & Kilgore also fully performed said contract upon their part in all other respects until on or about June 15, 1896, when said Nickey refused to further fulfill said contract on his part, and refused to permit said Short & Kilgore to complete the same upon their part, although said Short & Kilgore were at said time ready and willing so to do. That said Short & Kilgore have paid said Nickey in full for all said timber by him to them delivered under said contract and no portion of said $1,500 was needed for or applied to the payment of said timber. That upon the wrongful determination of said contract by said Nickey as aforesaid said Short & Kilgore became entitled to have said fifteen hundred dollars, so deposited with said Nickey as aforesaid, returned to them by said Nickey, and did demand of said Nickey the return of the same, but said Nickey failed and refused and has ever since failed and refused to pay said Short & Kilgore said fifteen hundred dollars or any part thereof." Alleges also an assignment by Short & Kilgore to

plaintiff of their right, title and interest in and to the said fifteen hundred dollars and prays judgment therefor with legal interest.

The answer alleges that the contract of September 10, 1895, was made by Short & Kilgore for the benefit of plaintiff; that immediately after its execution it was assigned to plaintiff by Short & Kilgore; admitted the reception of fifteen hundred dollars by defendant, but denies that it was paid as an advancement on timber to be furnished by defendant; but that under the contract it was understood and expressly agreed that it should be held by defendant as security for the faithful performance of the contract by the plaintiff Short & Kilgore and for stipulated damages for its breach, denies that on June 15, 1896, or at any other date, defendant failed and refused to perform the contract on his part or that he refused to permit Short & Kilgore to perform; alleges a fraudulent transfer of their property by Short & Kilgore to plaintiff on April 23, 1896, for the purpose of defrauding defendant; sets forth the attachment suit brought by defendant against Short & Kilgore and the settlement of that suit; sets forth the suit which culminated in a judgment in the Oregon Circuit Court and pleads the judgment then rendered as a bar to plaintiff's right of recovery and further pleads the adjustment of the Cottrell slander suit as a full and complete settlement of all matters of difference between plaintiff and defendant and denies all other allegations.

The replication denied the new matter set forth in the answer and pleaded the Oregon county judgment as an adjudication of the fact, that the defendant by the contract of June 15, 1896, had abandoned the contract of September 10, 1895, and pleaded the Oregon judgment as a bar to defendant's right to retain the fifteen hundred dollars as a forfeiture or as stipulated damages. At the close of all the evidence the court in-

structed the jury to find for plaintiff for fifteen hundred dollars, with legal interest.

The petition counts on a breach of the contract of September 10, 1895, by defendant, and alleges the date of the breach to have occurred on June 15, 1896—the date of the execution of the substitutional contract between plaintiff and defendant. The evidence of plaintiff does not show conclusively that defendant broke the contract prior to June 15, 1896. On the contrary, it is presumptively shown, by the attachment suit and the settlement of that suit by the payment to defendant of money for logs furnished Short & Kilgore, and by the new contract entered into by and between plaintiff and defendant for the further operation of defendant's mill, etc. (presumably by the consent of Short & Kilgore), that they (Short & Kilgore) had failed to keep and perform the contract and were for some reason unable to keep and perform it for the future and surrendered their interest in it and agreed that it should be terminated. The only thing that stands in the way of this inference is, the other inference which is fairly deducible from the connection of the lumber company with the contract from its very inception to its termination, viz., that it was the real party in interest in the contract from the start and that Short & Kilgore were but dummies put forward to shield the lumber company in the event a loss should be sustained in the purchase of timber and the operation of the mill. Woeheide, the manager of plaintiff, however, swore that the assignment of the contract by Short & Kilgore on the day of its execution was not accepted by the plaintiff. Be this as it may, the fact remains that the defendant is entitled to retain the fifteen hundred dollars, if prior to June 15, 1896, Short & Kilgore failed to keep and perform their part of the contract.

On the trial, the plaintiff relied on the Oregon county judgment as furnishing a bar to the defendant's right to retain

the fifteen hundred dollars as stipulated damages for a breach of the contract by Short & Kilgore, and the learned trial judge seemed to have fallen in with this view of the force and effect of the judgment and cut off the defense set forth in the answer by excluding testimony tending to establish it. If this ruling of the trial judge is a correct interpretation of the force and effect of the judgment, the case was properly tried and the judgment should be affirmed. But we are unable to agree that the Oregon county judgment is a bar to the defendant's right to claim and hold the fifteen hundred dollars as stipulated damages under the September 10 contract. There was no trial of the suit in Oregon county, no evidence was heard, the judgment was rendered on the motion of the defendants in the suit on the pleadings. We must, therefore, look to the pleadings and the motion for judgment to ascertain what was decided. The petition, for cause of action, alleged that the defendants had not received and paid for logs as per contract, by reason of which the plaintiff (Nickey) had lost a large sum of money as profits that would have accrued to him had the contract been kept and performed by defendants.

The answer alleged the deposit of the fifteen hundred dollars by Short & Kilgore with Nickey and the retaining of that sum by him as security for the performance of the contract by Short & Kilgore, and that if they failed to keep and perform their part of the contract, that the sum should be forfeited; that it was the intention of the parties to said contract that the said sum of fifteen hundred dollars should be taken as liquidated damages for a breach of the contract by Short & Kilgore and that plaintiff by retaining the same had released and discharged all pretended claims for damages set out in his petition, and alleges an abandonment of the contract by the substitution of the contract of June 15, 1896.

The replication denied that the original contract was ab-

rogated by the contract of June 15; alleged a contract made on January 21, 1897, between himself and the American Hardwood Lumber Company, whereby the contract of June 15 was annulled and the lumber company was to hold the leased premises under the contract of September 10, 1895, and containing a stipulation that none of the breaches of the contract of September 10, should be waived by the new contract. On the pleadings the lumber company moved for judgment on two grounds. First, that the replication admits the execution of the contract of June 15, 1896, pleaded as a substitute for the contract of September 10, 1895, and did not state facts sufficient to avoid it. Second, that the replication set up the contract of January 21, 1897, relating to the same subject-matter and plaintiff (Nickey) can not recover on the contract of September 10, 1895. The judgment recites that the motion was taken up, argued and sustained. The judgment is predicated on one or both of the grounds set forth in the motion, for it is so expressed by the court in its judgment. Under the maxim applicable to the construction of written instruments that "The express mention of one thing implies the exclusion of another," we are bound to exclude from consideration any other ground as having moved the court to render its judgment than those mentioned in the motion, though other grounds in support of the judgment may be found in the pleadings. Although the fifteen hundred dollars is pleaded as liquidated damages by the defendant in the suit and denied by Nickey, yet this issue was not brought to the attention of the court by the motion for judgment, and was not, therefore, adjudicated, and the rights of the respective parties as to this money is in nowise affected by the judgment, except in so far as it may be controlled or affected by the fact that the judgment did adjudge that the contract of September 10 was superseded by one of June 15. Nothing is adjudicated that has not passed under the review of

the court having jurisdiction of the subject-matter and the parties to the suit.   Nelson v. Barnett, 123 Mo. loc. cit. 571, and cases cited; Clemens v. Murphy, 40 Mo. 121; Spurlach v. Railroad, 76 Mo. 67; Tutt v. Price, 7 Mo. App. 194; State ex rel. v. James, 82 Mo. 509; Dawson v. Quiller, 61 Mo. App. 672; Richardson v. Adams, 4 Mo. 311; Dickey v. Heim, 48 Mo. App. 114.

According to the averments in the answer of the lumber company, in the Oregon county suit, the fifteen hundred dollars were given into the hands of Nickey as a forfeit, should Short & Kilgore fail to live up to the contract, and with the understanding that it should be retained as stipulated damages should they fail to keep and perform the contract.   The answer of Nickey in the present suit alleges that in April, 1896, Short & Kilgore violated the contract by making a fraudulent conveyance of all their assets to the lumber company and that on June 4, following, he instituted an attachment suit against them to recover for logs he had delivered under the contract of September 10.   By its answer in the Oregon county case, the plaintiff herein alleged that the fifteen hundred dollars were deposited as a forfeit and as and for stipulated damages should Short & Kilgore fail to carry out the contract.   We think this a correct construction of the contract, at any rate, the plaintiff is estopped to assert the contrary by its answer in the Oregon county case (Lilly v. Menke, 143 Mo. l. c. 146), and if it can be shown that prior to the execution of the contract of June 15, they did fail to keep and perform their contract of September 10, the defendant is entitled to retain the money.   The petition alleges that Short & Kilgore fully performed the contract on their part until June 15, 1896, when defendant refused to further fulfill the contract on his part. By the Oregon county judgment, the plaintiff established the fact that the September contract was abandoned by the defend-

ant, but it did not by any conclusive evidence prove the other allegation of the petition, that Short & Kilgore had, prior to that date, kept and performed the contract and that the fifteen hundred dollars had not become forfeited to defendant. The answer put in issue both of these averments, and it devolved on plaintiff to prove both to the reasonable satisfaction of the jury to entitle it to recover. Under the pleadings the defendant had the undoubted right to introduce evidence to prove that Short & Kilgore had violated their contract prior to June 15, 1896. After the Oregon county judgment was read in evidence, the only issue left to be submitted to the jury was whether or not Short & Kilgore had kept and performed the contract prior and up to June 15, 1896, when the substitutional contract was made. If they did, plaintiff is entitled to recover; if they did not, Nickey is entitled to retain the money as liquidated damages for the violation of the contract by Short & Kilgore. The settlement made in January, 1897, of the slander suit, seems to be a one-sided affair and all on the side and for the protection of the plaintiff. At any rate, it has no bearing whatever on the rights of the parties to the fifteen hundred dollars in controversy in this suit.

For the reason that the suit was tried on an erroneous construction of the scope and effect of the Oregon county judgment, the judgment is reversed and the cause remanded. All concur.